IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 3:25-cv-509

| | |
|---|---|
| JESSLYN ANDERSON, )<br><br>Plaintiff, )<br><br>v. )<br><br>CHARLOTTE-MECKLENBURG )<br>HOSPITAL AUTHORITY, D/B/A )<br>ATRIUM HEALTH BEHAVIORAL )<br>HEALTH CHARLOTTE, )<br><br>Defendant. ) | **AMENDED COMPLAINT**<br>**(Jury Trial Demanded)** |

Plaintiff, complaining of the Defendant, alleges as follows:

## I. <u>INTRODUCTION AND JURISDICTION</u>

1.    This is an action seeking legal and equitable relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq as amended.   Plaintiff brings this action against Defendant alleging a violation of Title VII of the Civil Rights Act of 1964, as amended,  in that she was retaliated against by being discharged from her employment for engaging in protected activity.

2.    Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1343, this being a proceeding to enforce rights and remedies secured under Title VII.  Jurisdiction is also conferred upon this Court by 42 U.S.C. § 2000(3), et seq. and 28 U.S.C. § 1331.

3.    Jurisdiction is further invoked pursuant to 28 U.S.C. §§ 2201 and 2202, this being an action for declaratory judgment declaring illegal the acts of Defendant complained of herein which violated rights secured to the Plaintiff by Title VII.

## II. **PARTIES**

4.      Plaintiff is an African-American female citizen and resident of York County, South Carolina.

5.      Defendant Charlotte-Mecklenburg Hospital Authority, d/b/a Atrium, Health, is a health care provider and employer within the meaning of Title VII, operating numerous facilities in North Carolina, including its affiliate/member hospital, Atrium Health Behavioral Health Charlotte, where Plaintiff was employed.

## III. **FACTS**

6.      Plaintiff began her employment with Atrium Health in 2001 as a registered nurse. She pursued advanced education and earned certification as a Nurse Practitioner (NP) in Family Medicine in 2014. In May 2016, she transferred to Atrium Health Behavioral Health Charlotte, an affiliate of the Charlotte-Mecklenburg Hospital Authority, to serve as an Advanced Practice Provider (APP) within the medical department. This facility is an inpatient psychiatric hospital with a 24-hour psychiatric emergency department, comprised of three inpatient units and three emergency room units, with a total bed capacity of 164 inpatient beds.

7.      The medical department operated with two APPs working alternating weeks with working hours of 8 a.m. to 7 p.m. and a part-time medical doctor providing supervision and limited daytime coverage from 7 a.m. to 11 a.m. The APPs bore the sole responsibility for delivering comprehensive medical services, including performing history and physical exams, inpatient consults, chronic disease management, emergency room assessments, responding to medical codes, and arranging transfers to higher-level care facilities. Given the continuous influx of patients and high acuity of psychiatric cases, the workload was consistently demanding and complex.

2

8.    In January 2022, Plaintiff filed EEOC Charge No. 430-2022-00989, alleging discrimination, disparate treatment, and a hostile work environment. Although the charge was dismissed on April 6, 2022, on the basis that the claims did not fall within a protected class as defined under Title VII, the act of filing the complaint constituted protected activity under Title VII.

9.    On March 8, 2022, Plaintiff's physician placed her on medical leave due to escalating stress, anxiety, and symptoms of PTSD caused by an increasingly hostile work environment. She was cleared to return to work on April 12, 2022, with a restriction limiting her shifts to 8 hours per day. Atrium Health approved the accommodation, and the Plaintiff's return-to-work date was scheduled for April 19, 2022.

10.   On April 19, 2022, Plaintiff met with her APP supervisor Marquita Boggess and Vice President of Nursing Services Jennifer Ziccardi. She was informed that, effective immediately, she would be required to work 11 a.m. to 7 p.m. starting the next day. This start time deviated from the Plaintiff's regularly scheduled start time of 8 a.m. Previously. there was established flexibility afforded to APPs where they could begin their shifts at 8 a.m. to provide coverage when the supervising physician was unable to provide coverage from 7 a.m. to 11 a.m. Plaintiff requested that this flexibility apply to her schedule if the physician was unavailable. Her request was denied.

Plaintiff expressed concerns via email to Ms. Boggess, Ms. Ziccardi, and the Human Resources (HR) leave department, citing a) the lack of medical coverage from 7 a.m. to 11 a.m., and b) leadership's overreach in providing an option to extend her leave as this conflicted with her physician's medical opinion. Plaintiff's physician had determined that she was ready to return to work on a limited schedule; extending her leave was not medically necessary. Plaintiff had no

3

alternative but to accept the start time, despite that it set her up for an excessive workload and contributed to continued mental distress. The start time of 11 a.m. put the Plaintiff in the difficult position of attempting to complete duties of a 12-hour shift within her 8 hour work schedule, often leading to missed breaks and further distress.

11. Due to the change in the Plaintiff's scheduled start time to a more difficult start time, that leadership was aware would create a more difficult and stressful work environment, Plaintiff filed an EEOC complaint (Charge No. 430-2022-01764) on June 10, 2022 alleging retaliation for engaging in protected activity. The retaliation occurred within two weeks of the dismissal of her original EEOC charge, (Charge No. 420-2022-00989), and immediately following her return from FMLA leave in April 2022. In this charge, Plaintiff documented that her supervisors—despite full awareness of her medical restrictions from her physician—imposed an inflexible 11 a.m. to 7 p.m. shift that exacerbated her existing mental health conditions and placed undue hardship on her.

Plaintiff noted that this treatment differed significantly from how her similarly situated colleague—who worked the opposite shift—was managed. That colleague was permitted to flex their start time to a more accommodating hour when coverage needs arose. In contrast, Plaintiff's request to resume the previously permitted 8 a.m. start time, which was essential to preventing backlogs in patient care, was denied without explanation. This denial occurred despite Plaintiff notifying leadership via email that the supervising medical doctor would not be covering the 7 a.m. to 11 a.m. shift.

12. Due to the  the existing hostile work environment, Plaintiff requested to work part-time on September 22, 2022, in an attempt to preserve her health and well being.  Her request for part-time status was approved and took effect on October 9, 2022.

13.     EEOC Charge No. 430-2022-01764 was accepted for mediation. However, the mediation conducted on October 20, 2022   failed, and the case was referred for further investigation by the EEOC.

14.     On January 11, 2023, Plaintiff was summoned to a meeting with Ms. Boggess and Ms. Ziccardi, where she was informed that her part-time position was no longer supported by the department. She was not given notice, explanation, or the opportunity to transfer to another role, unlike similarly situated employees who had not filed EEOC complaints. Plaintiff's system access was immediately revoked, and she was escorted from the premises by security. The medical department in which Plaintiff worked had functioned with one part-time and two full-time providers consistently since 2019. At no time were there any emails, meetings, or communications raising concerns about increased patient volume that would necessitate Plaintiff remaining in a full-time role. Likewise, there were no communications indicating a decline in patient volume that would justify the elimination of the part-time position.

15.     The Plaintiff had also obtained her Psychiatric Mental Health Nurse Practitioner Certificate in 2021. She completed clinicals at Atrium Health Behavioral Health and was already familiar with the internal workings of the hospital and patients. At the time the client was terminated from her role, she was not offered a role as a psychiatric provider although there were several open positions that the client could have transitioned to at the time nor was she given  the option of transitioning to the PRN pool.

16.     Plaintiff also observed that other similarly situated colleagues who had not filed EEOC complaints received more favorable treatment. For example, one colleague was allowed to transfer to the PRN pool when departmental hours changed, while others were actively supported by leadership in securing alternate roles within Atrium Health Behavioral Health. Another

5

employee who requested to transition to part-time was afforded the full policy-mandated transition period, ensuring no disruption to departmental operations or undue impact on the employee. In contrast, Plaintiff was subjected to an accelerated transition, denied comparable support, and ultimately terminated without adherence to established policies regarding part-time status changes or departmental restructuring.

17.     In June 2023, Plaintiff filed EEOC Charge No. 430-2023-03035 for wrongful termination, again citing retaliation for engaging in protected activities.

## IV.  CLAIM FOR RELIEF - RETALIATION

18.     Plaintiff re-alleges paragraphs 1 through 17 above.

19.     Plaintiff engaged in protected activity when she raised concerns of disparate treatment with her management in 2022 and when she filed two charges of discrimination against the agency in March, 2022 and June 2022.  The charge filed in June, 2022 was still pending when Plaintiff was terminated.  Other persons similarly situated to Plaintiff who had difficulty with the hours scheduled for them were not terminated.  To the best of Plaintiff's knowledge, neither of these employees have filed charges of discrimination.  Indeed, in 2022, as the nation was more fully returning to normal after the COVID pandemic, the demand for health care professionals remained high.  Based on Plaintiff's observations, there was no decrease in  patient volume or the workload in her department.

20.     Plaintiff's discharge was in retaliation for her engagement in protected activity.  But for her engagement in protected activity, Plaintiff would not have been terminated from her position.  Defendant's actions violate Title VII of the Civil Rights Act of 1964, as amended.

21.     Defendant's actions have caused Plaintiff economic harm and emotional distress, entitling her to compensatory damages and equitable relief.

6

## V. **DAMAGES**

22.     As a result of the discrimination complained of herein, Plaintiff has been deprived of her rights protected by Title VII.

23.     By reason of Defendant's conduct and approximate result thereof, Plaintiff has suffered loss of employment, loss of benefits, and loss of enjoyment of life and has suffered emotional distress.

24.     Plaintiff has suffered damages, including economic damages and emotional distress.

## VI. **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

25.     Plaintiff filed timely charges of discrimination with the Equal Employment Opportunity Commission (EEOC), Charge Number 430-2022-01764 and Charge Number 430-2023-03035.  The EEOC issued a Dismissal and Notice of Rights on April 17, 2025.   Plaintiff is filing this action within 90 days of receiving the Dismissal and Notice of Rights.  She has complied with all jurisdictional requirements and has exhausted administrative prerequisites before initiating this action.

## VII. **JURY TRIAL DEMANDED**

26.     Plaintiff hereby demands a trial by jury.

## VIII. **PRAYER FOR RELIEF**

27.     Wherefore, Plaintiff prays that the discrimination alleged herein be remedied in full and that the Court, after a jury trial:

(1)     Declare the actions complained of herein to be illegal;

(2)     Issue an injunction enjoining Defendant, its agents, employees,

7

successors, attorneys and those acting in concert or participation with Defendant and at its direction, from engaging in the unlawful practices set forth herein and any other employment practice to be shown in violation of Title VII of the Civil Rights Action of 1964, as amended;

(3)     Award Plaintiff compensatory damages, including damages for mental anguish and stress, and harm to Plaintiff's career opportunities;

(4)     Award Plaintiff back pay and all other economic damages to provide make whole relief;

(5)     Award Plaintiff her costs and expenses in this action, including reasonable attorney's fees, costs and other litigation expenses;

(6)     Grant such other and further relief as may be just and necessary to afford complete relief to Plaintiff.

This 15th day of July, 2025

*/s/ Geraldine Sumter*
GERALDINE SUMTER
N.C. Bar No. 11107
Ferguson Chambers & Sumter, PA
309 East Morehead Street, Suite 110
Charlotte, North Carolina 28202
Telephone:     (704) 375-8461
Facsimile:     (980) 938-4867
E-Mail:     gsumter@fergusonsumter.com

**ATTORNEY FOR PLAINTIFF**

8